UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
EMMA FEQUIERE,

               Plaintiff,

     - against -

TRIBECA LENDING; ROSICKI & ROSICKI;
FRANKLIN CREDIT MANAGEMENT CORP.;
GERALD GARDENER WRIGHT &
ASSOCIATES; GERALD GARDENER
WRIGHT; individually and in his official capacity
as referee; OCWEN FINANCIAL; LITTON
LOAN SERVICING; USA BANK; VANTIUM
REO CAPITAL MARKETS; BERKMAN,
HENOCH, PETERSON, PEDDY & FENCHEL,
P.C.,

               Defendants.
----------------------------------------------------------X

**MEMORANDUM AND
ORDER**

14-CV-812 (RRM)(LB)

ROSLYNN R. MAUSKOPF, United States District Judge.

       Following a state court judgment rendered against her, plaintiff *pro se* Emma Fequiere

brings this action, alleging that defendants violated various federal and state laws by engaging in,

and conspiring to engage in, unlawful conduct to procure the foreclosure of her property.

Defendants filed several motions to dismiss the claims.[1]  Because federal review of many of

Fequiere's claims is precluded by the doctrine of *res judicata* and because she fails to adequately

plead the elements of her remaining claims, the defendants' motions to dismiss are GRANTED.

---

[1] Litton Loan Servicing and Ocwen Financial jointly filed one motion to dismiss.  (Mem. in Supp. ("LLS & Ocwen Memo") (Doc. No. 74-7).)  Tribeca Lending, Franklin Credit Management Corp., USA Bank, Vantium REO Capital Markets, and Berkman, Henoch, Peterson, Peddy & Fenchel, P.C., jointly filed a separate motion to dismiss.  (Mem. in Supp. ("BHPPF Memo") (Doc. No. 79).)  And Rosicki, Rosicki & Associates separately filed a third motion to dismiss.  (Mem. in Supp. ("Rosicki Memo") (Doc. No. 73-11).)

# I.    BACKGROUND[2]

A. <u>Factual Background</u>

On August 29, 2006, Fequiere obtained a mortgage loan (the "Mortgage") from defendant Tribeca Lending ("Tribeca"), which was secured by the property at 21 Howard Street (the "Property"), located in Nassau County, New York.  (*See* Second Amended Complaint ("Complaint") (Doc. No. 42) at ¶ 26.)  The Mortgage was obtained in the amount of $299,000 and required monthly payments of $3,223.93.  (*See id.*)  By 2006, Fequiere was making mortgage payments to defendant Franklin Credit Management Corp. ("Franklin"), a subsidiary of the same parent company as Tribeca.[3]  (*See id.*)

In May 2007, Fequiere received a Notice of Assignment indicating that Tribeca had assigned the Mortgage to defendant mortgage servicer Litton Loan Servicing ("Litton").  (*See id.* at ¶ 15.)  On July 17, 2007, after Fequiere defaulted under the terms of the Mortgage, Tribeca filed a Notice of Foreclosure[4] and commenced suit against Fequiere in New York State Supreme Court, Nassau County (the "State Action").  (*See* State Court Foreclosure Summons

---

[2] For purposes of this motion, the Court accepts as true all factual allegations well-pled in the complaint and draws all reasonable inferences in Fequiere's favor.  *See Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).  Additionally, in adjudicating a Rule 12(b)(6) motion, the Court confines its consideration "to the facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by references, and to matters of which judicial notice may be taken."  *Baranski v. NCO Fin. Sys., Inc.*, No. 13-CV-6349 (ILG) (JMA), 2014 WL 1155304, at *3 (E.D.N.Y. Mar. 31, 2014) (quoting *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)); *see Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings.").

[3] Fequiere's Complaint appears to conflate Franklin with Tribeca as a single entity, and nowhere in her Complaint does she recognize a definitive distinction between the two.  (*See, e.g.*, Complaint at ¶¶ 4 ("Defendant Tribeca Lending/Franklin Credit"), 38 ("Tribeca (Franklin)"), 40 (same).)  However, the brief provided by Tribeca and Franklin indicate that they are both subsidiaries of Franklin Credit Holding Corporation.  (*See* BHPPF Memo. at 28.)

[4] Fequiere's Complaint avers that Tribeca filed the "Notice of [F]oreclosure" against her in May 2007.  It appears that she is referring to the Foreclosure Summons (though she does not specify), which was in fact filed on July 17, 2007.  (*Compare* State Court Foreclosure Summons ("Foreclosure Summons") (Doc. No. 73-4) at 1 *with* Complaint at ¶ 15.)

("Foreclosure Summons") (Doc. No. 73-4) at 1.)[5] Tribeca retained defendant law firm Rosicki,

Rosicki & Associates ("Rosicki") as counsel for the State Action.[6] (*See* Foreclosure Summons at

1; *see also* Complaint at ¶¶ 8, 28, 66.)

Tribeca moved for summary judgment in the State Action, which was granted by Order

on October 22, 2008. (*See* Summary Judgment Order (Doc. No. 73-5) at 1–4.) The state court

then appointed defendant Gerald Gardener Wright as Referee to compute the amount due to

Tribeca under the Mortgage. (*See id.* at 2–3.) During those proceedings, several of the

defendants, including Franklin and Litton, made repeated representations to Fequiere that she

would be offered a loan modification that would provide her with more favorable terms, but no

such modification ever materialized. (*See* Complaint at ¶¶ 21, 40.) Tribeca then informed

Fequiere in January 2010 that her loan modification application was denied. (*See* Complaint at ¶

40.)[7] In 2011, Ocwen Financial ("Ocwen"), another mortgage servicer, acquired the Mortgage

from Litton. (*See id.* at ¶ 7.) Tribeca later moved for judgment of foreclosure and sale, which

was issued on January 14, 2013.[8] (*See* Judgment of Foreclosure and Sale ("Foreclosure

Judgment") (Doc. No. 73-5) at 10–17.) In response, Fequiere moved to reargue the prior

summary judgment motion and amend her answer to the foreclosure complaint, (*see* Reply

Affirmation (Doc. No. 73-6) at 43–50), and submitted a proposed verified answer in support of

her motion, (*see* Proposed Verified Answer (Doc. No. 73-6) at pgs. 15-19). The state court

---

[5] For ease of reference, the Court refers to the page numbers assigned by ECF, rather than the individual page numbers of each individual exhibit within Doc. No. 73.

[6] With respect to the current federal action, Tribeca and Vantium REO Capital Markets are represented by defendant law firm Berkman, Henoch, Peterson, Peddy & Fenchel, P.C. ("BHPPF"), which formerly represented Fequiere in an unrelated matter. (*See* Complaint at ¶ 11.)

[7] In a different paragraph, Fequiere alleges that "defendants advised [her] . . . until August 2013 that she could have a loan modification." (*Id.* at ¶ 34(j).)

[8] Fequiere timely appealed the New York State Supreme Court's foreclosure judgment, and that judgment is currently pending before the Second Department.

denied that motion by Order on May 21, 2013. (*See* Denial of Mot. to Reargue and Amend (Doc. No. 73–6) at 54.) Finally, on October 15, 2013, the Property was auctioned for sale to Tribeca, the highest bidder, which then assigned its winning bid to defendant Vantium REO Capital Markets, L.P. ("Vantium").[9] (*See* Complaint ¶ 28; *see also* Referee's Deed (Doc. No. 73–7) at 1–2.)

B. Procedural Background

On October 25, 2013, Fequiere brought the instant action in the United States District Court for the Southern District of New York, which transferred the case to this Court. (*See* Transfer Order (Doc. No. 13) at 1–7.) Fequiere moved for a temporary restraining order and preliminary injunction, seeking an order of protection for the Property and a "Stay Away" order prohibiting defendants from posting notices on the door of the Property, which this Court denied by Order on March 25, 2015. (*See* Order on TRO (Doc. No. 84).) In her twenty-two count Complaint, Fequiere alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1962 *et seq.*, the Consumer Fraud Protection Act ("CFPA"), 12 U.S.C. § 5491(a) *et seq.*, the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and various state laws. Defendants filed separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), claiming that the doctrines of *Rooker-Feldman*, claim preclusion, and issue preclusion

---

[9] Fequiere also alleges in paragraph 28 that the Referee's Deed, dated November 1, 2013, indicates that Vantium, in fact, possesses the winning bid. (*See* Complaint at ¶ 28.) As Fequiere specifically refers to the Referee's Deed and relies upon it for this allegation, the Court takes judicial notice of the Deed. *See Hinds v. Option One Mortg. Corp.*, No. 11-CV-6149 (NGG) (RER), 2012 WL 6827477, at *4 n.8 (E.D.N.Y. Dec. 6, 2012) ("Although Wells Fargo does not appear to be a party in the state court proceeding, the Court takes judicial notice of the Referee's Deed that reflects that Wells Fargo, as Trustee of Option One, bought the subject property at the foreclosure sale, rendering it a successor to Option One's property interest."), *adopted by* 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013). However, Fequiere also alleges that her "[M]ortgage was sold to US Bank [on] October 15, 2013," (*see id.* at ¶ 10), and that "Tribeca says US Bank is the holder of the [M]ortgage," (*see id.* at ¶ 28). She appears to base these allegations upon statements made by a Rosicki attorney in the hearing before Judge Failla in the Southern District, which indicated that U.S. Bank is the current holder of the Property. (*See* Complaint at ¶ 28; *see also* S.D.N.Y. Hr'g Tr. at 9, 26, 28.) As it is not appropriate to resolve inconsistencies within the evidence at this point, the Court simply takes judicial notice of both the Referee's Deed and the Southern District hearing transcript.

bar Fequiere's claims, and further, that she fails to state a claim upon which relief could be granted.

## II.    DISCUSSION[10]

The defendants each assert that Fequiere's claims should be dismissed because they (a) are barred by the *Rooker-Feldman* doctrine; (b) are barred by the doctrines of claim preclusion and issue preclusion; and (c) fail to state a claim upon which relief can be granted.  Though the Court finds that Fequiere's claims are not barred by the *Rooker-Feldman* doctrine, the Court concludes that her claims are barred by the doctrines of claim and issue preclusion and that they fail to state a claim upon which relief can be granted.

### A.    *Rooker-Feldman*

Because the *Rooker-Feldman* doctrine is jurisdictional, the Court addresses its application first and finds that it does not preclude federal review of Fequiere's claims.

The *Rooker-Feldman* doctrine bars federal courts from exercising "jurisdiction over cases that essentially amount to appeals of state court judgments."  *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005)).  The doctrine, intended to be applied narrowly, "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp.*, 544 U.S. at 284.  In light of the "narrow ground" of the *Rooker-Feldman* jurisdictional bar, the doctrine does not prohibit a

---

[10] The Court reads a *pro se* plaintiff's submissions liberally and interprets them to raise the strongest arguments they suggest.  *See Niles v. Wilshire Inv. Group, LLC*, 859 F. Supp. 2d 308, 332 (E.D.N.Y. 2012).  However, the district court cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, nor does *pro se* status exempt that party from complying with the relevant rules of procedural and substantive law.  *See New v. Ashcroft*, 293 F. Supp. 2d 256, 257 (E.D.N.Y. 2003).

plaintiff from "present[ing] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party."[11] *Id.* at 284, 293.

The Second Circuit recently clarified the bounds of the *Rooker-Feldman* doctrine in the context of a prior foreclosure proceeding in *Vossbrinck*. 773 F.3d at 427–28. There, a state court had granted foreclosure of plaintiff's property in a prior state proceeding and the plaintiff initiated a federal suit shortly thereafter, alleging violations of numerous state and federal laws in connection with the servicing of his mortgage. *See id.* at 425. In his request for relief, he sought "title to his property, immediate tender of the property, declaratory relief, and punitive damages," and asked the court to void the foreclosure judgment. *Id.* at 426. Still, the Second Circuit acknowledged that plaintiff's *pro se* complaint could be liberally construed to assert claims of fraud that were not barred by the *Rooker-Feldman* doctrine because they sought damages for injuries plaintiff suffered as a result of the alleged fraud in connection with the foreclosure proceedings. *Id.* at 427. The Second Circuit reasoned that the adjudication of such claims did "not require the federal court to sit in review of the state court judgment." *Id.* at 427,

---

[11] For clarification, the Second Circuit has provided two instructive examples:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. That he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments. . . .

> [B]y focusing on the requirement that the state-court judgment [itself] be the source of the injury, we can see how a suit asking a federal court to "den[y] a legal conclusion" reached by a state court could nonetheless be independent for *Rooker-Feldman* purposes. Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.

*Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F.3d 77, 87–88 (2d Cir. 2005).

428 n.2 (discussing similar holdings reached by the Fifth, Sixth, and Seventh Circuits); *cf. Noel v. Hall*, 348 F.3d 1148, 1164 (9th Cir. 2003) ("If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.").

In light of this breadth of precedent, the Court construes Fequiere's submissions to assert claims that are not barred by the *Rooker-Feldman* doctrine because adjudication of her claims does not require this Court to sit in review of the state judgment. *See Vossbrinck*, 773 F.3d at 427. Though Fequiere appears to assert that she was aggrieved as a result of the state court's decisions, the heart of her claims arises out of defendants' alleged conduct in the procurement of the underlying mortgage and during the state court proceedings. Further, Fequiere's Complaint does not request reinstatement of her title to the Property, but rather requests that defendants be held liable for "damages," "prejudgment interest" in the amount of the loss she sustained, and an injunction "restrain[ing] all [d]efendants from committing *future* violations." (Complaint at ECF pg. 55 (emphasis added).) Because her claims are independent and do not arise out of the *state* court's judgment, but rather from defendants' alleged conduct, the Court finds that *Rooker-Feldman* does not deprive *this* Court of jurisdiction over her claims.[12] *See Babb v. Capitalsource, Inc.*, 588 F. App'x 66, 68 (2d Cir. 2015) (reversing district court and finding that the Second Circuit's decision in "*Vossbrinck* makes clear that plaintiff['s] suit," which sought compensation for defendants' alleged fraud in procuring foreclosure "[wa]s not barred by

---

[12] Furthermore, Tribeca's, Franklin's, and BHPPF's argument that Fequiere's federal claims are "inextricably intertwined" with the state court's judgment fails as well. "In *Exxon*, the Supreme Court implicitly repudiated the circuits' post-*Feldman* use of the phrase 'inextricably intertwined' to extend *Rooker-Feldman* to situations w[h]ere the source of the injury was not the state court judgment." *McCormick*, 451 F.3d at 394–95 (citing *Exxon Mobil Corp.*, 544 U.S. at 286 n.1).

*Rooker-Feldman* because the Complaint seeks damages for injuries suffered as a result of defendants' alleged fraud and does not attempt to reverse or undo a state court judgment"). *See also Truong v. Bank of America, N.A.*, 717 F.3d 377, 383 (5th Cir. 2013) (finding that plaintiff's claims that defendants committed unfair and deceptive acts in connection with the foreclosure of her mortgage loan were independent from their state claims, and therefore *Rooker-Feldman* did not apply because she "did not seek to overturn the state-court judgment, and the damages she requested were for injuries caused by the banks' actions, not injuries arising from the foreclosure judgment"); *McCormick v. Braverman*, 451 F.3d 382, 392 (6th Cir. 2006) ("None of these claims assert an injury caused by the state court judgments; Plaintiff does not claim that the state court judgments themselves are unconstitutional or in violation of federal law. Instead, Plaintiff asserts *independent claims* that those state court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means. . . . [The fact that] these claims may deny a legal conclusion of the state court . . . does not lead to a divestment of subject matter jurisdiction in the federal courts."); *accord Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 391 (5th Cir. 2012) (finding that *Rooker-Feldman* does not bar a claim that the state-court plaintiffs' lawyers obtained a settlement judgment through fraudulent misrepresentations); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 162, 171 (3d Cir. 2010) (finding that *Rooker-Feldman* does not bar federal plaintiffs' claims that the defendants had conspired to engineer its loss in state court by exercising improper influence on judges); *Nesses v. Shepard*, 68 F.3d 1003, 1004 (7th Cir. 1995) ("When a plaintiff seeks to relitigate a suit that has been decided against him, he is not so much attacking as trying to bypass the judgment in that suit; and the [proper] doctrine that blocks him is res judicata."); *Morris v. Am. Home Mortg. Serv'g, Inc.*, 443 F. App'x 22, 24 (5th Cir. 2011) (finding an otherwise independent claim of unlawful debt collection

practices in relation to a foreclosure judgment is barred because the only relief sought "was the setting aside of the state foreclosure judgment and staying the execution of the writ of possession"); *Drake v. St. Paul Travelers Ins. Co*, 353 F. App'x 901, 905 (5th Cir. 2009) (finding that *Rooker-Feldman* does not bar state-court loser's claim for damages as to state-court winner's allegedly fraudulent statements in state-court litigation).

    B.  <u>Fequiere's Claims Are Barred by the Doctrine of Res Judicata</u>

As the Second Circuit recently explained:

> The term *res judicata*, which means essentially that the matter in the controversy has already been adjudicated, encompasses two significantly different doctrines: claim preclusion and issue preclusion. Under *claim preclusion*, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. The doctrine precludes not only litigation of claims raised and adjudicated in a prior litigation between the parties (and their privies), but also of claims that might have been raised in the prior litigation but were not. The doctrine of *issue preclusion*, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.

*Marcel Fashions Group, Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107 (2d Cir. 2015) (citations and internal quotation marks omitted). Federal courts must use the *res judicata* doctrine of the state in which the state court judgment was granted. *See Kesten v. Eastern Sav. Bank*, No. 07-CV-2071 (JFB) (ARL), 2009 WL 303327, at *3 (E.D.N.Y. Feb. 9, 2009) (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982). As the prior decision here was rendered by a New York state court, New York's *res judicata* doctrine governs.

    1.  <u>Claim Preclusion</u>

All defendants argue that Fequiere's claims are barred by the doctrine of claim preclusion. The Court finds that claim preclusion bars Fequiere's claims as to all defendants except Rosicki, Wright, and BHPPF.

"The doctrine of claim preclusion, or *res judicata*, bars the subsequent litigation of any claims that were or could have been raised in a prior action." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 128 (2d Cir. 2015) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). The doctrine applies if "(1) there [wa]s a previous adjudication on the merits; (2) the previous action involved [the party against whom *res judicata* is invoked] or its privy; and (3) the claims involved were or could have been raised in the previous action." *E.g.*, *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171 (E.D.N.Y. 2010) (alteration in original) (quoting *Whelton v. Educ. Credit Mgmt. Corp.*, 432 F.3d 150, 155 (2d Cir. 2005)), *aff'd* 446 F. App'x 360 (2d Cir. 2011).

Here, the state court entered its summary judgment order in favor of Tribeca on the basis that "the entire unpaid balance secured [by the Property was] due and owing," and then entered a subsequent judgment of foreclosure of sale. (Summary Judgment Order at 1; Foreclosure Judgment at 10–17.) Each of these orders operates as a final adjudication on the merits for *res judicata* purposes. *See, e.g.*, *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008) ("It is long settled in this Court and in New York State courts that a summary judgment dismissal is considered a decision on the merits for *res judicata* purposes."); *Swiatkowski*, 745 F. Supp. 2d at 171 (noting that an "earlier state court action, which include[s] a Final Judgment of Foreclosure and Sale, [i]s a previous adjudication on the merits" in satisfaction of the first *res judicata* requirement).

Further, the requirement that "the previous action involved [the party against whom *res judicata* is invoked] or its privy" is met, as Fequiere was the defendant in the State Action and is the plaintiff here, and Tribeca was the plaintiff in the State Action and is a defendant here. *See Hinds*, 2012 WL 6827477, at *5 (finding this requirement satisfied where plaintiff was party to

the state court proceeding as a defendant and now brings this federal action as a *pro se* plaintiff); *Swiatkowski*, 745 F. Supp. 2d at 172; *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt*, 701 F. Supp. 2d 340, 352 (E.D.N.Y. 2010); *Done v. Wells Fargo Bank, N.A.*, No. 08-CV-3040 (JFB) (ETB), 2009 WL 2959619, at *4 (E.D.N.Y. Sept. 14, 2009).

Fequiere argues that claim preclusion is inapplicable because some of the defendants were not parties to the State Action. (*See* Mem. in Opp'n (Doc. No. 73-14) at 19.) However, a non-party to an earlier action may still invoke claim preclusion if it can demonstrate that it was in privity with a party to the earlier action. *See Houdet v. U.S. Tennis Ass'n*, No. 13-CV-5131 (FB) (LB), 2014 WL 6804109, at *4 (E.D.N.Y. Dec. 3, 2014) (finding *res judicata* to apply "not just to the parties in a prior litigation but also to those in privity with them" where the "new defendants have a sufficiently close relationship to justify [its] application" (internal quotation marks omitted)); *Quiroz v. U.S. Bank Nat'l Ass'n*, No. 10-CV-2485 (KAM) (JMA), 2011 WL 2471733, at *7 (E.D.N.Y. May 16, 2011) (finding that the "privity requirement of [the] res judicata doctrine is met in this case as to all plaintiffs" where all plaintiffs were in privity with the plaintiffs in the prior action), *adopted by* 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011); *see also Lacy v. Principi*, 317 F. Supp. 2d 444, 447 (S.D.N.Y. 2004) ("[A] party cannot avoid . . . res judicata . . . by bringing suit against a new defendant that is in privity with the original defendant."). "A relationship of privity 'includes those who are successors to a property interest, those who control an action although not formal parties to it, [and] those whose interests are represented by a party to the action.'" *Modular Devices, Inc. v. Alcatel Alenia Space Espana*, No. 08-CV-1441 (JS) (WDW), 2010 WL 3236779, at *4 (E.D.N.Y. Aug. 12, 2010) (quoting *Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir. 1997)).

Here, Fequiere's Complaint itself, taken as true, demonstrates that such privity exists between Tribeca, a party to both the state and federal actions, and each of the defendants except Rosicki, Wright, and BHPPF. First, Franklin is in privity with Tribeca as a result of Tribeca's representation of Franklin's interest in the State Action. Specifically, the Complaint alleges that "Fequiere as mortgagor executed [the Mortgage] with Defendant Tribeca Lending/Franklin Credit as [m]ortgagee." (*See* Complaint at 26.) Even ignoring the fact that Fequiere regularly conflates Tribeca and Franklin as a single entity, the Complaint indicates that she was making her mortgage payments to *Franklin* in 2006 – a year before Tribeca initiated the State Action. In fact, the ground on which Tribeca brought the State Action was that Fequiere defaulted on the terms of her Mortgage by failing to make her payments to Franklin, and Tribeca therefore adequately represented Franklin's interest to justify application of *res judicata*. *See Modular Devices, Inc.*, 2010 WL 3236779, at *4.

The facts alleged in paragraph 28 of the Complaint and in the Referee's Deed also establish privity between Tribeca and both Vantium and U.S. Bank, as Tribeca assigned its winning auction bid to Vantium. *See Yeiser*, 535 F. Supp. 2d at 423 (stating that "[s]ince the loan was transferred to GRP in May 2005," almost one year after the state foreclosure action, "GRP is a successor to that interest and is also in privity with MERS," which was the plaintiff in the foreclosure litigation); *Hinds*, 2012 WL 6827477, at *4 n.8 (finding the privity requirement satisfied where Wells Fargo was not a party in the state court proceeding, but "as Trustee of Option One, bought the subject property at the foreclosure sale, rendering it a successor to Option One's property interest"). Crediting Fequiere's allegation that U.S. Bank is the current holder of the Mortgage, (see Complaint at ¶¶ 10, 28, 33), U.S. Bank is in privity with Tribeca as successor-in-interest of the Property. However, for privity purposes, the Court need not

determine which entity is, in fact, the current holder of the Mortgage – because the Mortgage was the interest litigated in the State Action, and serves as the basis of the claims against both Vantium and U.S. Bank, claims arising out of the Mortgage interest must be barred.  Further, Tribeca represented the interests of those with a property interest in the Mortgage in the State Action.

Ocwen and Litton were similarly in privity with Tribeca for purposes of these claims.  By plaintiff's own contention, Litton serviced plaintiff's mortgage until Ocwen "acquired [the mortgage] from Litton [] and became the successor in interest to Litton" in 2011.  (Complaint at ¶ 7.)  Under New York law, both the party servicing the mortgage and the party that later acquires it (becoming a successor in interest) are considered to be in privity with the party to the original action concerning the mortgage for purposes of *res judicata*.  *See Yeiser*, 535 F. Supp. 2d at 423 ("GMAC and GRP were in privity with MERS in the state court action [because] GMAC serviced the loan at the time of the foreclosure action [and since] the loan was transferred to GRP . . . , GRP is a successor to that interest and is also in privity with MERS"); *see also Council v. Homes Depot, Inc.*, No. 04-CV-5620 (NGG) (KAM), 2006 WL 2376381, at *4 (E.D.N.Y. Aug. 16, 2006) ("New York state case law provides that privity extends to parties 'who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action.'") (quoting *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277, (1970)).

Lastly, all of the claims Fequiere asserts here either were, or could have been, raised in the State Action.  New York has adopted a "tranComplainttional" approach to claim preclusion, which provides that a later claim could have been raised in the prior action if it "aris[es] out of the same factual grouping as [the] earlier litigated claim even if the later claim is based on

13

different legal theories or seeks dissimilar or additional relief." *Segreto v. Town of Islip*, No. 12-CV-1961 (JS) (WDW), 2013 WL 303327, at *11 (E.D.N.Y. Feb. 12, 2013) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). This approach is designed to prevent a party from "remain[ing] silent in the first action and then bring[ing] a second one on the basis of a preexisting claim for relief that would impair the rights or interests established in the first action." *Munsch v. Evans*, No. 11-CV-2271 (JFB) (ETB), 2012 WL 528135, at *8 (E.D.N.Y. Feb. 17, 2012) (quoting *Henry Modell & Co. v. Minister, Elders & Deacons of Ref. Prof. Dutch Church*, 502 N.E.2d 978, 981 n.2 (N.Y. 1986)); *see also Dolan v. Select Portfolio Serv'g*, No. 13-CV-1552 (PKC), 2014 WL 4662247, at *4 (E.D.N.Y. Sept. 18, 2014) (noting that though New York adopts a permissive counterclaim rule, which does not require a party to assert all counterclaims in the original action, that party may not bring a subsequent lawsuit that amounts to an attack on a judgment previously issued by the state court); *In re Merhi*, 518 B.R. 705, 714 (Bankr. S.D.N.Y. 2014) (holding that debtor was barred by *res judicata* in bringing a later claim, where any successful challenge via the later claim would "impair the validity of the Foreclosure Judgment," and "undermine the relief granted in the Foreclosure Action").

Whether cast as violations of RICO, FDCPA, CFPA, RESPA, or of any of the numerous state laws enumerated in the Complaint, Fequiere effectively alleges that defendants improperly obtained the Foreclosure Judgment through conspiracy and fraud. (*See* Complaint at ¶¶ 9, 12–25, 29–48.) However, Fequiere asserted these claims in the State Action in her proposed verified answer submitted in support of her motion to amend her answer. (Proposed Verified Answer at pgs. 15-19.). Specifically, she raised a variety of affirmative defenses purporting to attack the validity of the underlying mortgage and the propriety of the State Action, including that Tribeca: (1) "lack[ed] the standing to sue because it was not the legal owner of the" Mortgage; (2) failed

to plead "facts sufficient to establish that the alleged debt is valid"; (3) "c[ame] to the court with unclean hands"; (4) "engaged in fraud to procure" the Mortgage; and (5) did "not possess a valid lien upon the [Property] and [could not] pursue a Mortgage Foreclosure." (*Id.*) The state court considered and ultimately denied that motion.[13] (Denial of Mot. to Reargue and Amend (Doc. No. 73-6) at 54.) Claim preclusion thus bars federal review of these claims, which were, or could have been brought as defenses in the State Action.[14] *See, e.g.*, *Solomon*, 2013 WL 1715878, at *5 ("The state-law claims asserted by plaintiff arise from the origination of the Mortgage and attack the ability of defendants to enforce it in the foreclosure proceedings. These claims could have been raised as a defense to foreclosure in state court, and therefore cannot be relitigated in a subsequent suit in federal court."); *Hinds*, 2012 WL 6827477, at *5 ("Inasmuch as Plaintiff's fraud claim is premised on his allegations that Defendants obtained the *underlying mortgage* through predatory lending tactics and fraud, *res judicata* operates to preclude federal review of such a claim . . . [since plaintiff's claims] arise from the same factual grouping –

---

[13] New York courts are in general agreement that a court may consider the merits of a proposed amendment upon a motion to amend where the claims or defenses raised in the amendment are plainly without merit on their face. *See* 84 N.Y. Jur. 2d Pleading § 238 (2015) (noting that the merits or legal sufficiency of the proposed amendment may be examined if it is "clearly and patently insufficient on its face"); *Carroll*, 109 A.D.3d at 630 (noting that "the legal sufficiency or merits of a proposed amendment to a pleading" may be examined if "the insufficiency or lack of merit is clear and free from doubt"); *cf. Duszynski v. Allstate Ins. Co.*, 107 A.D.3d 1448, 1449 (noting that a court generally "should not examine the merits or legal sufficiency of a proposed amendment unless the proposed pleading is clearly and patently insufficient on its face" (citing C.P.L.R. § 3025(b)).

[14] Fequiere's Memorandum in Opposition further clarifies the extent to which she predicates her Complaint on defendants' allegedly fraudulent conduct in procuring the Mortgage and the subsequent foreclosure, and why her claims are barred by *res judicata*. For instance, she alleges that defendants "had no legitimate excuse for submitting false documents and then affirming the sale of the [P]roperty, [which was] a direct cause of [her] injury along with Ocwen/Litton Loans," (Mem. in Opp. (Doc. No. 73–14) at 25), and that there were "two unlawful foreclosure[s] against 21 Howard Street," (*id.* at 29). Further, she claims that the "lack of notice and . . . refusal to honor the demand for proof of payment required by Litton . . . would invalidate[] [the allegedly] untimely acceleration . . . by Tribeca in June 2007." (*Id.* at 19.) She goes on to claim that had Litton "noticed and complied with the Notice requirement and complied with the request for documentation within the 30 days allowed by law for [her] to defend the foreclosed property with Matrix Financial, this whole matter plausibly could have been averted." (*Id.* at 24.) These allegations in the Complaint, along with the other allegations contained within it that Tribeca did not have the "right" or standing to foreclose the Property, demonstrate that Fequiere is seeking alternative relief in federal court based on the same series of tranComplainttions involved in the foreclosure proceeding. *See Yeiser*, 535 F. Supp. 2d at 421 ("Even if there are variations in the facts alleged or different relief is sought, if the actions are grounded on the same gravamen of the wrong[,] *res judicata* applies.").

namely . . . the right of [d]efendants to enforce that agreement in a state court foreclosure proceedings"); *Singh v. Parnes*, 199 F. Supp. 2d 152, 159 (S.D.N.Y. 2002) ("Under these principles, a party cannot avoid the preclusive effect of *res judicata* or collateral estoppel by recasting allegations of fraud adjudicated in the prior litigation as a federal RICO action."); *see also Yeiser*, 535 F. Supp. 2d at 421 ("According to New York law . . . *res judicata* . . . applies to defenses that could have been litigated, including defenses to a foreclosure.").

The Court therefore concludes that Fequiere's claims are barred against those defendants that were either present in, or in privity with the parties present in, the State Action – Tribeca, Franklin, Litton, Ocwen, Vantium, and U.S. Bank – but that claim preclusion does not bar her claims against remaining defendants Rosicki, Wright, and BHPPF.[15]

## 2. Issue Preclusion

While not barred by claim preclusion, Fequiere's claims against Rosicki and Wright[16] are nonetheless barred by the doctrine of issue preclusion.

The doctrine of issue preclusion "is a narrower species of *res judicata*, [which] precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Tsirelman v. Daines*, 19 F. Supp. 3d 438, 449 (E.D.N.Y. 2014) (quoting *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 500 (1984)). "The party

---

[15] In cases involving multiple defendants, some of whom are in privity with a party in the original suit, and some of whom are not, courts have allowed plaintiffs' claims to proceed as not barred against only those non-privy defendants. *See Yeiser*, 535 F. Supp. 2d at 423 (holding that *res judicata* applied to two defendants who were privies with parties present in the prior action and not to the last non-privy defendant); *Mercado v. Playa Realty Corp.*, No. 03-CV-3427 (JO), 2005 WL 1594306, at *6 (E.D.N.Y. July 7, 2005) (finding that *res judicata* barred claims only against those parties present in the prior action and not against those not in privity with the original parties).

[16] Though the Complaint names both Gerald Wright (both in his individual capacity and in his official capacity as referee) and Gerald Gardener Wright and Associates in the caption, the Complaint itself only makes allegations against Wright in his official capacity or simply "Gerald Wright" generally. However, even if the Court construes the ambiguous references to encompass all three entities, all of the claims are based on already litigated issues. Issue preclusion therefore bars claims against all three of these entities.

invoking collateral estoppel need not have been a litigant in the prior action." *Yeiser*, 535 F. Supp. 2d at 424; *see also Swiatkowski*, 745 F. Supp. 2d at 169. Rather, for issue preclusion to apply, the following four requirements must be met: "(1) the identical issue was actually raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012) (alteration in original). The party seeking to apply issue preclusion bears the "burden of showing that the issues are identical and were necessarily decided in the prior action," and the party opposing its application bears the "burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues." *Id.* (quoting *Kulak v. City of New York*, 88 F.3d 63, 72 (2d Cir. 1996)); *Proctor v. LeClaire*, 715 F. 3d 402, 414 (2d Cir. 2013).

### a. Identical Issues Actually Litigated and Decided

In order for the "identity" and "actually litigated" requirements of issue preclusion to be satisfied, the issue "must have been properly raised by the pleadings or otherwise placed at issue and actually determined in the prior proceeding." *Evans v. Ottimo*, 469 F.3d 278, 282 (2d Cir. 2006).

Fequiere filed a motion in the State Action to reargue and amend her answer after the state court decided that Tribeca was entitled to foreclosure based on the amount that Wright computed was due. Attached to that motion, Fequire filed a proposed verified answer, in which she raised various affirmative defenses for the first time. (*See* Proposed Verified Answer at pgs. 15-19.) Among the newly raised affirmative defenses were the assertions that Tribeca lacked standing to pursue the foreclosure and that the Mortgage was fraudulently procured. (*See id.*)

By raising these defenses in her Proposed Verified Answer, Fequiere placed them "at issue," meaning that they were "actually litigated" in the prior proceeding and qualify as "identical issue[s]." *Sanchez v. Abderrahman*, No. 10-CV-3641 (CBA) (LB), 2013 WL 8170157, at *4–5 (E.D.N.Y. July 24, 2013) (citing *Evans*, 469 F.3d at 281). Upon consideration, the state court, acknowledging that it had considered all of the responsive affirmations and exhibits, denied Fequiere's motions, determining that she offered no "reasonable excuse for her failure to oppose [Tribeca's] motion for summary judgment," failed to present "a potentially meritorious defense to the action," and that "failure to make such showing [wa]s preclusive." (Denial of Mot. to Reargue and Amend at 54.)

b. Full and Fair Opportunity to Litigate

Further, Fequiere has not met her burden in showing that she lacked a "full and fair opportunity to litigate" in the prior proceedings. *Evans*, 469 F.3d at 281–82 (noting that the party attempting to defeat the application of collateral estoppel has the burden of establishing its absence). In order to satisfy the "full and fair opportunity to litigate" requirement, the "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Wilson v. Ltd. Brands, Inc.*, No. 08-CV-3431, 2009 WL 1069165, at *2 (S.D.N.Y. Apr. 17, 2009) (quoting *Kremer*, 456 U.S. at 481).

Fequiere raised affirmative defenses including allegations of fraud and lack of standing in in a motion responding to the state court's summary judgment order, which the court denied for the reasons stated above. (*See id.* at ¶¶ 12–26; *see also* Proposed Verified Answer at pgs. 15-19; Denial of Mot. to Reargue and Amend at 54.) In finding that Tribeca was entitled to foreclose on the Property, the state court implicitly and necessarily resolved the issues of: (a) any alleged impropriety in the procurement of the Mortgage or foreclosure; (b) Tribeca's alleged lack of

standing or rightful entitlement to the Property; (c) the propriety of Wright's conduct in reporting the amount due under the Mortgage; and thereby (d) whether any benefit received by the foreclosure would be "unjust."[17]  *See Swiatkowski¸*745 F. Supp. 2d at 169 (finding that where plaintiff's claims are identical to those previously decided by a state court's issuance of Judgment of Foreclosure and Sale, plaintiffs had received a full and fair opportunity to litigate their claims in state court); *Yeiser*, 535 F. Supp. 2d at 424–25 (holding that where plaintiffs asserted identical issues to those raised in federal court in their answer and moving papers filed in a state court foreclosure action, those issues had been "placed in issue and actually determined" in the prior proceeding, precluding plaintiffs from raising those claims in a subsequent federal action); *Caldwell*, 701 F. Supp. 2d at 351 (barring plaintiff's claims where they would require a federal court to revisit issues already necessarily decided in state court).

As all four requirements of issue preclusion are met, the Court finds that the doctrine bars relitigation of the issues relating to the allegedly fraudulent procurement of the Mortgage or Tribeca's lack of standing.  Fequiere's claims pertaining to violations of: (a) RICO; (b) CFPA; (c) RESPA; (d) FDCPA; (e) TILA; (f) Section 1983 and 1985[18]; and (g) the various state laws

---

[17] Insofar as Fequiere alleges that the *judgment itself* was fraudulently procured as a result of the state court being persuaded by Rosicki's filing of false documents, (*see* Complaint at ¶ 6), the Court finds that these claims, too, are barred by issue preclusion.  First, in the State Action, the parties litigated the issue of Tribeca's standing to foreclose.  (*See* Proposed Verified Answer at pg. 16.)  In the current action, Fequiere recasts this issue as a fraud claim against Rosicki.  (*See* Complaint at ¶ 8 ("[Rosicki] participated in a scheme to file fraudulent foreclosure documents . . . knowing . . . that Defendant Tribeca/Franklin had no standing to file a foreclosure.").)  However, in its finding that Tribeca was entitled to foreclosure, the state court necessarily decided the issue of whether any fraud had occurred.

[18] Fequiere also vaguely alleges in her Complaint that defendants "interfered with [her] right to Due Process and Equal Protection in the foreclosure process," appearing to invoke 42 U.S.C. §§ 1983 and 1985.  (Complaint at ¶ 2.). These claims are also barred by issue preclusion, as they could have been raised in the State Action. *See Trakansook v. Astoria Fed. Sav. & Loan Ass'n*, No. 06-CV-1640 (SMG), 2007 WL 1160433, at *7 (E.D.N.Y. Apr. 18, 2007) (finding plaintiff could have presented her federal constitutional claims in the state court foreclosure litigation because the state court also has jurisdiction over [Section] 1983 claims), *aff'd* 2008 WL 4962990 (2d Cir. Nov. 21, 2008); *see also Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 84 (1984) (finding that state court judgments have claim and issue preclusive effect in Section 1983 cases).

she asserts (including those involving unjust enrichment, fraud, and conversion) are all based on these issues. All such claims against Rosicki and Wright are therefore barred.

Issue preclusion similarly bars all claims against BHPPF arising out of fraudulent procurement of the Mortgage or lack of standing. Though BHPPF was neither a party to the state court claims, nor in privity with a party in that action, the Second Circuit does not require mutuality of parties for issue preclusion. *See Deng v. Aramark Educ. Grp., Inc.*, No. 04-CV-453 (DRH) (MLO), 2006 WL 752826, at *6 (E.D.N.Y. Mar. 23, 2006) *aff'd sub nom. Yaohua Deng v. Aramark Educ. Grp., Inc.*, 253 F. App'x 84 (2d Cir. 2007) ("Under non-mutual collateral estoppel, third parties unrelated to the original action can bar the litigant from relitigating the same issue in a subsequent suit"); *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367 n.3 (2d Cir. 1995) ("Following the Supreme Court[]… this Circuit generally no longer considers mutuality for preclusion purposes") (citing *Nevada v. United States*, 463 U.S. 110, 143–44 (1983)). Therefore, even though BHPPF was not in privity with any parties to the original action, preclusion applies with equal force to all issues litigated in the prior action.[19]

The only remaining claim is BHPPF's alleged breach of fiduciary duty, insofar as Fequiere's claim revolves around BHPPF's *current* representation of Tribeca, which could not have been raised or litigated in the State Action.[20]

---

[19] Because BHPPF seeks to use issue preclusion defensively, the Court need not engage in analysis as to whether preclusion is fair to plaintiff. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 n.15 (1979) ("The problem of unfairness is particularly acute in cases of offensive estoppel . . . because the defendant against whom estoppel is asserted typically will not have chosen the forum in the first action."). The concerns outlined in *Parklane* were limited to the offensive use of issue preclusion – when the party bringing an action wishes to use a defendant's previous loss against a different plaintiff to preclude relitigation of an issue.

[20] Fequiere also alleges in her Opposition Papers (not in the Complaint) that Tribeca and Franklin violated the Truth in Lending Act, 15 U.S.C. § 1601, *et seq* ("TILA"). (*See* Mem. in Opp. at 29.) The Court notes that this claim, too, is potentially barred by issue preclusion. *Compare Utreras*, 2013 WL 4700564, at *4 (noting that "courts within this circuit have found violations of federal predatory lending statutes to arise out of separate transactions than mortgage

## C.  Fequiere's Claim against BHPPF Fails to State a Claim[21]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In order to plead "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard of plausibility does not require the plaintiff to demonstrate "probability," but requires a showing of "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).  To that end, the reviewing court must "accept as true the facts alleged in the complaint, and may consider documents incorporated by reference in the complaint and documents upon which the complaint relies heavily."  *In re Citigroup ERISA Litig.*, 662 F.3d 128, 136 (2d Cir. 2011) (citation and internal quotation marks omitted).  All reasonable inferences must then be drawn in favor of the plaintiff.  *See id.* at 152.  However, the Court is not bound to accept as true legal conclusions couched as factual allegations and therefore, "[t]hreadbare recitals of the elements of a cause of action,

---

defaults, and therefore have declined to find them barred by *res judicata*"), *with Doural v. Bank of N.Y.*, No. 04-CV-0775 (SJ), 2005 WL 408050, at *4 n.1 (E.D.N.Y. Feb. 18, 2005) (finding that plaintiffs' TILA claim was barred under *res judicata* principles because plaintiffs could have raised their claims in the state foreclosure proceedings). Further, Fequiere's allegation is no more than a bare and conclusory statement – she does not explain how Tribeca or Franklin violated TILA.  *See Scott v. Capital One, Nat'l Assocs.*, No. 12-CV-183 (ER), 2013 WL 1655992, at *4 n.7 (E.D.N.Y. Apr. 17, 2013) (finding that plaintiffs' "purported federal [TILA and RESPA] claims fail for the additional reasons that Plaintiffs have failed to satisfy the minimum pleading requirements necessary to sustain them").

[21] "The standards for reviewing dismissals granted under [Rules] 12(b)(1) and 12(b)(6) are identical."  *Solomon v. Ocwen Loan Serv'g, LLC*, No. 12-CV-2856 (SJF) (GRB), 2013 WL 1715878, at *3 n.4 (E.D.N.Y. Apr. 12, 2013) (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999)).

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Fequiere's last remaining claim — that BHPPF breached its fiduciary duty — must be dismissed because Fequiere has failed to state a plausible claim for relief. Fequiere contends that BHPPF established a fiduciary duty to her when it represented her in a former unrelated proceeding in 2003, and that BHPPF breached that duty by: (a) representing some of the defendants in the instant matter; (b) submitting false documents in the furtherance of its clients' participation in the alleged RICO enterprise; and (c) failing to disclose material information to her.

"To allege a breach of fiduciary duty, the defendant must allege 'the existence of a fiduciary relationship, misconduct by the defendant, and damages directly caused by the defendants' misconduct." *Kerik v. Tacopina*, No. 14-CV-2374 (JGK), 2014 WL 6791615, at *15 (S.D.N.Y. Dec. 2, 2014) (quoting *Magrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 549 (2d Cir. 2009)); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 204 (S.D.N.Y. 2008).

Fequiere's claim must be dismissed because she cannot demonstrate that any fiduciary duty actually existed with respect to this matter. As the Court previously noted in denying Fequiere's motion to disqualify BHPPF as counsel, "Fequiere [here] cannot demonstrate any substantial connection between the subject matter of BHPPF's prior representation of her and the subject matter of its current representation of Tribeca." (Order Adopting R&R ("March 20, 2015 Order") (Doc. No. 84) at 7.) "New York Rule of Professional Conduct 1.9 governs an attorney's duties to former clients, and it deals with client representations that are forbidden by a conflict of interest with a former client, and preserving the former client's confidential information." *Kerik*, 2014 WL 6791615, at *19 (citing N.Y. Rules of Prof'l Conduct § 1.9). Specifically, the Rule

provides that "[u]nless the former client gives informed consent, confirmed in writing, a lawyer shall not knowingly represent a person *in the same or substantially related matter* in which a firm with which the lawyer formerly was associated had previously represented a client whose interests are materially adverse to that person." N.Y. Rules of Prof'l Conduct § 1.9(b)(1) (emphasis added). Fequiere cannot argue that BHPPF's former representation of her is remotely related to its current representation of defendants in this matter, as they deal with entirely different subject matters, and she demonstrates no other basis for the existence of a fiduciary relationship.

The Complaint also fails to allege with any specificity which filed documents were false, or which facts were misrepresented or not disclosed to her. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Lerner*, 459 F.3d at 290 ("[I]n order to comply with Rule 9(b), the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." (internal quotation marks omitted)). Because the Complaint fails to establish that a fiduciary duty existed and is devoid of any particularized facts as to BHPPF's alleged fraud, Fequiere's remaining claims must be dismissed.

D.  Leave to Amend Would Be Futile

"The Second Circuit instructs that a district court should not dismiss a *pro se* complaint 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Estes v. Toyota Fin. Serv.*, No. 14-CV-1300 (JFB) (SIL), 2015 WL 222137, at *2 (E.D.N.Y. Jan. 12, 2015) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). "Where, however, the problems with the causes of action are

'substantive' and would not be cured with 'better pleading,' repleading would be futile and any such request should be denied." *Poles v. Brooklyn Cmty. Hous. & Servs.*, No. 10-CV-1733 (BMC) (LB), 2010 WL 1992544, at *2 (E.D.N.Y. May 14, 2010) (quoting *Cuoco*, 222 F.3d at 112); *see also* 28 U.S.C. § 1915(e)(2)(B). Accordingly, the Court finds that amendment would be futile in the instant case. Fequiere has already amended her complaint twice and has had ample time to formulate her allegations with sufficient particularity to state a claim, yet has failed to do so. Even reading the allegations in the Complaint to afford her every favorable inference to which as a *pro se* litigant is entitled, it does not, and cannot, state a viable claim. For these reasons, the Court declines to grant Fequiere leave to amend.

### III.    <u>CONCLUSION</u>

All but one of Fequiere's federal and state law claims are barred by *res judicata*. Fequiere's remaining claim of a breach of fiduciary duty against BHPPF fails to state a claim for relief. Accordingly, each of the defendants' motions to dismiss (Doc. Nos. 73 and 78) is GRANTED, Fequiere's second amended complaint is DISMISSED in its entirety, and leave to replead is DENIED.

The Clerk of Court is directed to enter judgment accordingly, send a copy of this Memorandum and Order and the accompanying judgment to plaintiff pro se, and to close the case.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
      March 11, 2016

_____
ROSLYNN R. MAUSKOPF
United States District Judge